# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN MISSOURI

| | |
|---|---|
| MARTIN LINK, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:00CV1597 AGF |
| ) | |
| AL LUEBBERS, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the CJA 30 vouchers of Christopher McGraugh and Jennifer Herndon for work performed on Martin Link's executive clemency proceedings and on civil cases challenging Missouri's execution protocol. At issue is whether work performed on the civil cases qualifies for compensation under 18 U.S.C. § 3599(e). The Court believes that the civil cases are not of the type of proceeding that specifically qualify for compensation under the statute. Before ruling on this issue, however, the Court will give counsel an opportunity to brief the Court on why these proceedings qualify for compensation under the statute.

## BACKGROUND

Martin Link, who was convicted in Missouri state court of kidnapping, rape, and murder, and was sentenced to death, filed a petition for writ of habeas corpus in this Court on December 4, 2001. The Court denied the petition on September 10, 2004.

The United States Court of Appeals for the Eighth Circuit entered judgment affirming the denial in Link v. Luebbers, 469 F.3d 1197 (8th Cir. 2006), cert. denied, 552 U.S. 993 (2007). Subsequently, on May 22, 2008, the Eighth Circuit appointed Jennifer Herndon and Christopher McGraugh to represent Link in executive clemency proceedings. The Court of Appeals made the nunc pro tunc date of the appointment to May 8, 2008. Despite counsel's efforts on his behalf, Link was executed by the State of Missouri on February 9, 2011.

Counsel have each submitted CJA 30 vouchers for work performed from April 18, 2008, through February 8, 2011. In addition to seeking reimbursement for work performed pursuing executive clemency proceedings, counsel seek reimbursement for work performed on two civil challenges to Missouri's lethal injection protocol: Clemons v. Crawford, 2:07CV4129 FJG (W.D. Mo.), a challenge to the constitutionality of the manner in which Missouri implements its lethal injection protocol, and Ringo v. Lombardi, No. 2:09CV4095 NKL (W.D. Mo.), an action alleging that Missouri's use of certain chemicals in its lethal injection protocol violates the Federal Food, Drug & Cosmetic Act. Counsel further request reimbursement for work performed in a federal § 1983 challenge seeking an unbiased clemency decision maker: Link v. Nixon, 2:11-CV-04040-NKL (W.D. Mo.). And counsel seek to be

compensated for filing three motions to recall the mandate in state court, which were made in an attempt to stay the execution.

In a letter to the Hon. William Jay Riley, Chief Judge of the United States Court of Appeals for the Eighth Circuit, Christopher McGraugh set forth his reasons for requesting compensation for his work on matters outside of executive clemency:

> **Lethal Injection Challenges.**
>
> As you will note, there was 44.6 hours of work performed relative to Link's representation in his clemency proceedings and ancillary matters as it relates to the challenges to the lethal injection protocol in the State of Missouri. The lethal injection challenges were significant to the representation of Matin Link in the clemency and ancillary matters. Initially, these lethal injection challenges[,] which coincided with [] Baze v. Kentucky, 553 U.S. 35 (2008)[,] created a moratorium in the staying of executions between 2005 and 2010. It was instrumental to make sure that Martin Link was a party to the challenges to the lethal injection protocol to avoid the government's request or the setting of an execution date by the courts.
>
> The lethal injection challenges to the Missouri protocol was utilized as a grounds [*sic*] to the Missouri Supreme Court not to set an execution date, to recall its mandate, and, ultimately, as a party in [] Ringo, was the last vehicle in [the United States Court of Appeals for the Eighth Circuit] and the United States Supreme Court to stay the execution of Martin Link.
>
> Lastly, the lethal injection was a component to the clemency petitions. It was incumbent upon counsel that an exhausted and fully litigated lethal injection challenge be presented to the Governor. One of the many grounds on which the Governor can grant clemency is that a petitioner such as Link had exhausted a legal claim to the courts; however, was unable to gain relief and the Governor could use his powers of equity to grant clemency in such a case. As such, it was our belief to fully

represent Martin Link's interest and to avoid an execution date, our attempt to stay the execution once it was set and to raise a fully executed and litigated claim to the Governor, the lethal injection challenges to the protocol of Missouri through the [Eighth Circuit] must be pursued on behalf of Mr. Link.

**Motions to Recall the Mandates.**

There was approximately 29.6 hours of work performed relative to the representation of Link in clemency proceedings and ancillary matters as to three motions to recall the mandates which were filed on behalf of Martin Link. Link I was a claim related to the expansion of the mandated proportionality review, subsequent to the Missouri Supreme Court decision in State of Missouri v. Davis, 318 S.W.3d 618 (Mo. banc 2010) and an issuance of a certificate of appealability in Goodwin v. Roper. Link II was to raise claims of ineffective assistance of counsel based on recent United States Supreme Court and Missouri Supreme Court opinions. Link III was raised as a claim challenging the lethal injection protocol as it violated Missouri law and state regulations. All three of these claims raised by the separate motions to recall the mandate were grounds presented to the Missouri Supreme Court to avoid the setting of an execution date, as well as all three separate exhausted legal claims were pled as grounds in Martin Link's clemency petition in an attempt to seek clemency from the Governor for the State of Missouri.

**Challenge Seeking Independent Clemency Decision Maker**.

Accordingly, the court will note the evolution of a civil rights action against Governor Nixon as it relates to Governor Nixon being the clemency decision maker. The evolution of this claim initiated when then Governor Blunt and current Governor Nixon, acting as then Attorney General, representing the State of Missouri, requested by way of an amicus brief that Missouri be permitted to seek the death penalty on non-homicide cases, particularly those that involve child rape. In Kennedy v. Louisiana, 128 S. Ct. 2641 (2008), pending before the United States Supreme Court, Governor Nixon filed on behalf of the State of Missouri an amicus brief advocating the constitutionality of seeking the death

penalty for cases involving child rape. As Mr. Link was convicted of the rape of a child, it was counsel's belief that Governor Nixon and then Governor Blunt could not be fair decision makers in the clemency determination, in that the denial of clemency may be based on the offense for which the death penalty was not authorized in the State of Missouri. The State of Missouri statutes permit the Governor to appoint a Board of Probation to make a clemency decision in his absence. This cause of action pursuant to 42 U.S.C. § 1983 was filed in the United States District Court for the Western District of Missouri and the dismissal thereof was appealed to the Eighth Circuit Court of Appeals and the United States Supreme Court and was utilized as an attempt to stay the execution in both [*sic*] the United States District Court, the Eighth Circuit Court of Appeals and the United States Supreme Court. As with the lethal injection challenge and the motions to recall the mandate, the 1983 action was also a component and a separate claim in the clemency petition. As stated above, it was incumbent upon counsel to present the Governor with fully litigated and exhausted claims through the courts in order to request the Governor to grant clemency and/or appoint a Board to make the clemency decision.

It is counsel's belief that both the lethal injection challenge, the civil rights action instituted under 42 U.S.C. § 1983 and the other work performed on behalf of Mr. Link post-appeal relate directly to the ancillary matters and clemency proceedings which counsel is entitled to be compensated for, pursuant to Harbison v. Bell, 129 S. Ct. 1481 (2009).

## DISCUSSION

The issue in this case is whether Link's civil cases and the motions to recall the mandate constitute "other appropriate motions and procedures" under 18 U.S.C. § 3599(e), such that counsel may be reimbursed for their work in those proceedings.

Title 18 U.S.C. § 3599(e) states:

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

In <u>Harbison v. Bell</u>, 129 S. Ct. 1481 (2009), the Supreme Court of the United States held that 18 U.S.C. § 3599 authorizes federal counsel to represent their clients in state clemency proceedings after federal habeas proceedings have terminated. 129 S. Ct. at 1491. The decision in <u>Harbison</u> is instructive for the instant case.

In <u>Harbison</u>, the government argued that the statute only authorized counsel to represent petitioners in federal clemency proceedings. <u>Id.</u> at 1486. The government urged the Court to read the word "federal" into subsection (e), even though Congress had not specifically written the word into the statute. <u>Id.</u> The government maintained that the word "federal" is implied in subsection (a)(1)[1]; the government argued that the word "federal" must, therefore, be implied into subsection (e) as well. <u>Id.</u>

The Court rejected the government's analysis for several reasons. <u>Id.</u> at 1487. First, the Court noted that "subsection (a)(2) refers to state litigants, and it in turn

---

[1]Subsection (a)(1) governs the appointment of counsel in federal capital prosecutions.

provides that subsection (e) applies to such litigants." Id. Therefore, there is no reason to assume that Congress intended subsection (e) to apply only to federal clemency. Id. Additionally, the reference in subsection (e) to "other clemency" indicated that Congress understood that in some states clemency may be pursued through the legislature or the courts. Id. The Court found this to be a direct indication that Congress intended subsection (e) to apply to state clemency.

The Court found the limitation on federal counsel's duties to be implied by the structure of the statute and the word "subsequent." Id. at 1488 ("It is the sequential organization of the statute and the term 'subsequent' that circumscribe counsel's representation."). Additionally, the Court found it important that the "organization of subsection (e) . . . mirror[s] the ordinary course of proceedings for capital defendants." Id.

The Court further rejected the government's argument that allowing federal counsel to represent his or her client in state clemency proceedings would also require counsel to represent his or her client during state retrial after being granted federal habeas relief. Id. The Court found that counsel would not be authorized to represent his or her client during a state retrial because the retrial would not be a "subsequent" proceeding under § 3599(e). Id. Rather, any retrial would be "the commencement of new judicial proceedings," which are not covered by the statute. Id. Similarly, new

state habeas proceedings would be "new judicial proceedings" and not covered by § 3599(e). Id. at 1488-89.

The Court noted that in certain circumstances, it may be permissible for federal counsel to represent his or her client in state habeas corpus proceedings "to exhaust a claim in the course of her federal habeas representation." Id. at 1489 n. 7. Authority for this representation comes under § 3599(e)'s reference to "other appropriate motions and procedures." Id. Decisions as to whether counsel may be authorized to represent his or her client in these types of circumstances must be made by the district courts on "a case-by-case basis." Id.

Finally, the Court noted that "[s]ubsection (e) emphasizes continuity of counsel, and Congress likely appreciated that federal habeas counsel are well positioned to represent their clients in the state clemency proceedings that typically follow from the conclusion of § 2254 litigation." Id. at 1490-91.

In light of the Court's reasoning in Harbison, the Court believes that civil litigation challenging the State's lethal injection protocol is not included in § 3599(e), and therefore, counsel may not be compensated for work performed in such cases. "[T]he sequential organization of the statute and the term 'subsequent' . . . circumscribe counsel's representation." Id. at 1488. And the "organization of subsection (e) . . . mirror[s] the ordinary course of proceedings for capital defendants."

Id. Section 1983 or other federal challenges to a state's execution protocol are not the type of criminal or quasi-criminal proceedings that ordinarily flow from the denial of a federal petition for writ of habeas corpus. To be sure, these civil actions are commonly filed by prisoners facing execution. However, they are of a different nature than post-conviction or clemency proceedings, for they do not challenge the fact of a prisoner's execution but rather the manner in which an execution may be carried out. Because of their separate nature, they are not "subsequent" stages of judicial proceedings, but are clearly "the commencement of new judicial proceedings." Id. As a result, the Court believes that counsel may not be compensated for their work in Crawford or Ringo.

Similarly, the Court believes that Link's § 1983 challenge seeking an unbiased clemency decision maker is the commencement of a new judicial proceeding not covered under § 3599(e). Such a proceeding does not ordinarily flow from post-conviction or clemency proceedings, it is a new judicial proceeding. Moreover, it is established case law in this Circuit that a clemency petitioner does not have a right to an unbiased decision maker. E.g., Wainwright v. Brownlee, 103 F.3d 708, 709 (8th Cir. 1997) (collecting cases). As a result, the Court believes that counsel may not be compensated for their work in Link v. Nixon.

Additionally, the proper avenue for appointment of counsel in federal civil cases is under 28 U.S.C. § 1915(e)(1). Link could have moved for in forma pauperis status in the federal civil cases and requested appointment of counsel. However, a review of Link's cases shows that he did not request counsel under § 1915. For this reason as well, the Court believes that work performed in Link's federal civil actions is not compensable under § 3599(e).

Link's motions to recall the mandate are a different matter. As stated in footnote seven in <u>Harbison</u>, the Court may determine on a "a case-by-case basis" whether such actions are compensable under § 3599(e). <u>Id.</u> at 1489 n. 7. These actions are similar to federal counsel exhausting a claim in state court in the course of federal habeas representation. They were taken in order to stay Link's execution, and therefore, these actions are compensable under § 3599(e).

Finally, counsel have requested compensation for work performed before May 8, 2008, the nunc pro tunc date of their appointment. Counsel must provide a reason to the Court if they wish to be compensated for these hours.

Accordingly,

**IT IS HEREBY ORDERED** that counsel shall show cause, in writing and no later than thirty days from the date of this Order, why their CJA claims should not be reduced in accordance with the terms of this Order.

Dated this 21st day of July, 2011.

                                                                       _____
                                                                       AUDREY G. FLEISSIG
                                                                       UNITED STATES DISTRICT JUDGE