**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN MISSOURI**

MARTIN LINK,                          )
                                      )
            Petitioner,               )
                                      )
      v.                              )          No. 4:00CV1597 AGF
                                      )
AL LUEBBERS,                          )
                                      )
            Respondent.               )

**<u>MEMORANDUM AND ORDER</u>**

On May 8, 2008, Martin Link – who was then under a sentence of death but who has

since been executed – filed a motion with the Eighth Circuit Court of Appeals seeking

preauthorization for federally appointed counsel under 21 U.S.C. § 848[1] and 18 U.S.C.

§ 3006A to be compensated for work performed in pursuit of executive clemency in the State

of Missouri.   The Eighth Circuit Court of Appeals granted the motion, specifically

"authoriz[ing] [counsel] to receive payment of fees and expenses for their representation of

Martin Link in executive clemency proceedings."   <u>Link v. Luebbers</u>, No. 04-3868 (8th Cir.

May 22, 2008).  On May 18, 2011, counsel submitted several CJA 30 vouchers to the Eighth

Circuit Court of Appeals, requesting compensation for fees incurred in clemency

proceedings, in filing three motions to recall the mandate, in two federal 42 U.S.C. § 1983

actions challenging the legality of Missouri's execution protocol, and in a § 1983 challenge

_____

[1]The relevant portions of 21 U.S.C. § 848 have been transferred to 18 U.S.C. § 3599 without substantive changes.  <u>See</u> Pub. L. No. 109–177, 120 Stat. 192, 231–232, §§ 221–222 (Mar. 9, 2006).  For clarity and convenience, the Court will hereafter cite only to § 3599.

seeking an unbiased clemency decision maker.  On June 15, 2011, the Eighth Circuit Court of Appeals transferred the vouchers to this Court for review.  The issue before the Court is whether pursuing the federal civil actions is compensable under 18 U.S.C. § 3599(e).  The Court finds that counsel may be compensated for filing the motions to recall mandates and for pursuing the § 1983 due process challenge seeking an unbiased clemency decision maker.  However, the Court finds that counsel may not be compensated for pursuing the federal civil challenges to the legality of Missouri's execution protocol.  The Court will accordingly reduce the submitted compensation.

## Background

Counsel, Christopher McGraugh and Jennifer Herndon, each submitted CJA 30 vouchers for work performed from April 18, 2008, through February 8, 2011.  In addition to seeking reimbursement for work performed pursuing executive clemency proceedings, counsel seek reimbursement for work performed on two civil challenges to Missouri's lethal injection protocol: Clemons v. Crawford, 2:07CV4129 FJG (W.D. Mo.) ("Clemons"), a challenge to the constitutionality of the manner in which Missouri implements its lethal injection protocol, and Ringo v. Lombardi, No. 2:09CV4095 NKL (W.D. Mo.) ("Ringo"), an action alleging that Missouri's use of certain chemicals in its lethal injection protocol violates the Controlled Substances Act and the Federal Food, Drug & Cosmetic Act.  Counsel also request reimbursement for work performed in a federal § 1983 challenge seeking an unbiased clemency decision maker: Link v. Nixon, 2:11-CV-04040-NKL (W.D.

Mo.) ("Nixon").  Finally, counsel seek to be compensated for filing three motions to recall the mandate in state court, which were made in an attempt to stay the execution.

In an Order dated July 21, 2011, the Court found that counsel could be compensated for pursuing the motions to recall the mandate because they were filed in order to stay Link's execution.  But the Court also informed counsel that it did not believe they could be compensated for pursuing the federal civil cases because they were "new judicial proceedings" and "not the type of criminal or quasi-criminal proceedings that ordinarily flow from the denial of a federal petition for writ of habeas corpus."  Additionally, the Court noted that counsel had requested compensation for work performed before the nunc pro tunc date of their appointment.  The Court directed counsel to show cause why they should be compensated for fees incurred pursuing federal civil litigation and for work performed before their appointment date.  Counsel have responded by filing a brief.

Counsel argue that Link's federal civil cases qualify for federal counsel under § 3599(e) because this Court and the Eighth Circuit Court of Appeals have previously compensated clemency counsel for pursuing such actions and because the duties of clemency counsel include filing litigation to remove affirmative obstacles such as a conflict of interest in the decision making process and negative obstacles such as the failure to exhaust available judicial remedies for grievances.

## 18 U.S.C. § 3599(e)

Title 18 U.S.C. § 3599(e) states:

Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

## Harbison and post-Harbison Case Law

In Harbison v. Bell, 129 S. Ct. 1481 (2009), the Supreme Court of the United States held that 18 U.S.C. § 3599 authorizes federal counsel to represent their clients in state clemency proceedings after federal habeas proceedings have terminated. 129 S. Ct. at 1491. The Court finds it useful to discuss the Harbison decision because the reasoning in Harbison is instructive for this case.

In Harbison, the government argued that the statute only authorized counsel to represent petitioners in federal clemency proceedings. Id. at 1486. The government urged the Court to read the word "federal" into subsection (e) even though Congress had not specifically included that word in the statute. Id. The government maintained that the word "federal" is implied in subsection (a)(1)[2]; the government argued that the word "federal" must, therefore, be implied into subsection (e) as well. Id.

_____

[2]Subsection (a)(1) governs the appointment of counsel in federal capital prosecutions.

-4-

The Court rejected the government's analysis for several reasons. <u>Id.</u> at 1487. First, the Court noted that "subsection (a)(2) refers to state litigants, and it in turn provides that subsection (e) applies to such litigants." <u>Id.</u> Therefore, there is no reason to assume that Congress intended subsection (e) to apply only to federal clemency. <u>Id.</u> Additionally, the reference in subsection (e) to "other clemency" indicated that Congress understood that in some states clemency may be pursued through the legislature or the courts. <u>Id.</u> The Court found this to be a direct indication that Congress intended subsection (e) to apply to state clemency.

The Court found the limitation on federal counsel's duties to be implied by the structure of the statute and the statute's use of the word "subsequent." <u>Id.</u> at 1488 ("It is the sequential organization of the statute and the term 'subsequent' that circumscribe counsel's representation."). Additionally, the Court found it important that the "organization of subsection (e) . . . mirror[s] the ordinary course of proceedings for capital defendants." <u>Id.</u>

The Court further rejected the government's argument that allowing federal counsel to represent his or her client in state clemency proceedings would also require counsel to represent his or her client during state retrial after being granted federal habeas relief. <u>Id.</u> The Court found that counsel would not be authorized to represent his or her client during a state retrial because the retrial would not be a "subsequent" proceeding under § 3599(e). <u>Id.</u> Rather, any retrial would be "the commencement of new judicial proceedings," which are not covered by the statute. <u>Id.</u> Similarly, new state habeas proceedings would be "new judicial proceedings" and not covered by § 3599(e). <u>Id.</u> at 1488-89.

-5-

The Court noted that in certain circumstances, it may be permissible for federal counsel to represent his or her client in state habeas corpus proceedings "to exhaust a claim in the course of her federal habeas representation." Id. at 1489 n. 7.  Authority for this representation comes under § 3599(e)'s reference to "other appropriate motions and procedures." Id.  Decisions as to whether counsel may be authorized to represent his or her client in these types of circumstances must be made by the district courts on "a case-by-case basis." Id.

Finally, the Court noted that "[s]ubsection (e) emphasizes continuity of counsel, and Congress likely appreciated that federal habeas counsel are well positioned to represent their clients in the state clemency proceedings that typically follow from the conclusion of § 2254 litigation." Id. at 1490-91.

In a post-Harbison case, the United States District Court for the Southern District of Ohio was confronted with the issue of whether § 3599(e) applied to a § 1983 action.  In Cooey v. Strickland, Slip Copy, 2010 WL 1434312 (S.D. Ohio 2010), a state prisoner under a sentence of death brought a § 1983 action challenging the constitutionality of the lethal execution protocol used by the State of Ohio.  Id. at *1.  Plaintiff requested compensation for a health expert pursuant to Harbison and 18 U.S.C. § 3599.  The court denied the request, holding that § 3599(e) "does *not* include civil actions against state officials," because such actions are not within the scope of the statute.  Id. at *3 (emphasis in original).

In Gary v. Humphrey, Slip Copy, 2011 WL 205772, Case No. 4:97-CV-181 CDL (M.D. Ga., 2011), the court was confronted with the issue of whether federally funded

counsel could be compensated for pursuing in state court an "extraordinary motion for a new trial" based on DNA test results that petitioner claimed cast doubt upon his guilt.  Counsel for petitioner noted that Georgia law required the motion to be filed immediately upon discovery of the test results and that Georgia law did not provide for the appointment of counsel in such proceedings.  See Petitioner's Motion to Reconsider, Docket No. 214 at 4. Counsel argued that the filing of the motion was a "subsequent" proceeding specifically authorized by § 3599(e).  Id. at 2.  The court disagreed, finding petitioner's interpretation of "subsequent" to be overbroad and without regard to the context of the rest of the statute or the nature of the action for which the appointment was made.  Gary, 2011 WL 205772 at *4. The court "interpret[ed] that phrase in the statute to mean that appointed counsel shall continue to represent a state prisoner 'throughout every subsequent stage of available judicial proceedings' related to the federal action for which counsel was originally appointed."  Id. The court found that the motion for new trial was "qualitatively disconnected" from the federal proceedings for which federal counsel was appointed.  Id. at *5.  "Rather than the last step in a federal habeas proceeding, it is the first step in a new state proceeding."  Id. at *6. Accordingly, the court refused the request for compensation.

## Discussion

A.     Section 1983 Due Process Challenge to Clemency Decision Maker

In Nixon, Link brought a § 1983 complaint for declaratory and injunctive relief alleging denial of due process in clemency proceedings because the Governor of the State of Missouri, when acting as the Attorney General for the State of Missouri, had filed an

amicus brief supporting the death penalty for perpetrators of child rape, one of the crimes for which Link had been convicted.  Link also alleged that the Governor, Jay Nixon, had a conflict of interest because when he was the Attorney General he repudiated the same evidence that Link was presenting in clemency proceedings.  Defendants, Governor Nixon and the State of Missouri, moved to dismiss the complaint for failure to state a claim upon which relief can be granted.  In granting the motion, the court stated:

> Although some minimal due process protections apply to a State clemency proceeding, under Missouri law the decisions of whether to grant or deny clemency and whether to appoint a board of inquiry are left to the discretion of the governor.  According to Plaintiff's allegations, Governor Nixon's views regarding clemency were made public while he was Attorney General.  Subsequently, Missouri voters elected Nixon to the position of Governor, holding the constitutional power to make clemency determinations.  It is not alleged that Defendants simply rolled a dice to determine whether to grant clemency or intentionally interfered with Link's access to full clemency proceedings.  Link's theory that Governor Nixon is simply predisposed to reject his petition for clemency fails to state a claim for which relief may be granted.

Link v. Nixon, 2:11-CV-04040-NKL (W.D. Mo.).  Link's appeal was dismissed as moot after his execution.

In this case, counsel argue that clemency counsel have a duty to ensure that the clemency process is both substantive and procedurally just.  Though not controlling, the ABA has issued guidelines regarding clemency counsel's duties.  See American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Rev'd Feb. 2003, 31 Hofstra L. Rev. 913 (2003) (the "Guidelines").  See Wiggins v. Smith, 539 U.S. 510, 522, 524-25 (2003) (ABA guidelines determine what is

reasonable practice for counsel in criminal proceedings).  The Guidelines state, "in addition to assembling the most persuasive possible record for the decisionmaker [*sic*], counsel must carefully examine the possibility of pressing legal claims asserting the right to a fuller and fairer process."  Guidelines at 937.  With regard to this proposition, the Guidelines cite to Wilson v. U.S. Dist. Court for the Northern Dist. of California, 161 F.3d 1185 (9th Cir. 1998), in which a death row inmate filed a § 1983 action alleging violations of due process in clemency proceedings.

As the court noted in Nixon, some minimal due process protections apply to state clemency proceedings.  See Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 288-89 (1998); Young v. Hayes, 218 F.3d 850, 853 (8th Cir. 2000) (finding viable due process claim where inmate alleged that district attorney threatened to fire attorney under her supervision if she provided information to the governor in connection with the inmate's clemency petition).  This is a developing area of law, and the Court believes that Link's due process challenge was non-frivolous, regardless of the fact that the case was dismissed for failure to state a claim.  Moreover, the Guidelines recommend that clemency counsel be prepared to raise due process challenges in furtherance of clemency proceedings.

This does not fully answer the question of whether counsel may be compensated for pursuing the due process challenge, however.  The § 1983 action must fall under one of the provisions of § 3599(e), which requires counsel to represent a petitioner in "all available post-conviction process, together with applications for stays of execution and *other appropriate motions and procedures*, and shall also represent the defendant in such

competency proceedings and *proceedings for executive or other clemency as may be available to the defendant*." (Emphasis added). The relevant question is whether the § 1983 action constituted an "appropriate motion or procedure" or whether it was part of Link's "proceedings for executive clemency." The Court finds that in this instance the § 1983 due process challenge was an essential part of Link's executive clemency proceedings. Having due process rights in state clemency proceedings would mean very little if a clemency petitioner could not seek to enforce those rights during the clemency process. And such a challenge could not effectively be made, in all practicality, without the assistance of federal counsel. As a result, the Court concludes that the work performed in Nixon is compensable under § 3599(e).

B.    Federal Civil Challenges to Missouri's Lethal Injection Protocol

In Clemons, three death-sentenced inmates filed a § 1983 action alleging that the Missouri Department of Corrections employed incompetent and unqualified personnel to carry out executions by lethal injection. Plaintiffs argued that they were likely to experience unconstitutional pain and suffering in the process of being put to death. On April 22, 2008, Link moved to intervene in the action, and both McGraugh and Herndon entered their appearances on plaintiff's behalf. On July 15, 2008, the court granted the defendants' judgment on the pleadings. Link filed an appeal, and the Eighth Circuit Court of Appeals affirmed on November 10, 2009. The Supreme Court of the United States denied the plaintiff's petition for writ of certiorari on June 28, 2010.   Clemons v. Crawford, 2:07CV4129 FJG (W.D. Mo.).

-10-

In Ringo, five death-sentenced inmates filed an action for alleged violations of the Federal Controlled Substances Act ("CSA") and the Federal Food, Drug & Cosmetic Act ("FDCA"). Plaintiffs alleged that defendants' use of lethal injection drugs violated the CSA because the defendants do not obtain the drug lawfully, and plaintiffs alleged that defendants violated the FDCA because the drugs are not prescribed by a licensed practitioner and were not approved by the FDA for use in lethal injections. Plaintiffs also raised a preemption claim. Plaintiffs did not argue that they were not subject to execution. Rather, plaintiffs sought a declaratory judgment that state officials were violating federal law. Link was permitted to intervene, represented by McGraugh and Herndon. On August 19, 2010, the court granted defendants' motion for judgment on the pleadings as to plaintiff's CSA and FDCA claims, finding that those statutes did not create a private cause of action. However, the court did not dismiss the preemption claims at that time. On January 24, 2011, Link filed a motion to stay execution. The court denied the motion on February 8, 2011, finding that Link had not shown a significant possibility of success on the merits and that the relative harm to the parties did not warrant a stay. Link was executed the following day. The Eighth Circuit Court of Appeals later denied Link's appeal as moot. The court eventually dismissed plaintiffs' preemption claims in summary judgment proceedings. Ringo v. Lombardi, No. 2:09CV4095 NKL (W.D. Mo.).

In this case, counsel argue, "It was instrumental to make sure that Martin Link was a party to the challenges to the lethal injection protocol to avoid the government's request or the setting of an execution date by the courts." Furthermore, counsel assert:

> It was incumbent upon counsel that an exhausted and fully litigated lethal injection challenge be presented to the Governor. One of the many grounds on which the Governor can grant clemency is that a petitioner such as Link had exhausted a legal claim to the courts; however, was unable to gain relief and the Governor could use his powers of equity to grant clemency in such a case.

Counsel also maintain that the two federal civil actions were used as grounds before the Missouri Supreme Court to stay the execution. Finally, counsel

> assumes that the Court would have no difficulty in justifying payment and authorizing a claim for work performed in gathering records and interviewing witnesses relevant to grounds in Link's clemency petition. Accordingly, counsels' work to remove obstacles for full and fair consideration of their client's application for clemency can be no less appropriate and, therefore, no less justifiable for payment.

Counsel also point out that work performed pursuing federal civil challenges to the constitutionality of execution protocol has been found to be compensable in the past by this Court, the United States District Court for the Western District of Missouri, and the Eighth Circuit Court of Appeals. Counsel argue this demonstrates "ample precedent, practice and custom" to show that these proceedings are compensable under § 3599(e) and Harbison.

Again, the Court is constrained by the terms of § 3599(e). Counsel may only be compensated for pursuing these lawsuits if they constitute "applications for stays of execution[,] other appropriate motions and procedures . . . [or] proceedings for executive clemency. . . ." Counsel appear to argue that the lawsuits comprise proceedings for executive clemency because they are integral to the clemency process.

The Court is unpersuaded by counsel's arguments. The Court is aware that clemency may be granted by the Governor for any reason, which by definition includes the grounds

-12-

raised in the lethal injection challenges.  However, simply providing one or more additional grounds for clemency does not make the federal lawsuits essential to the clemency proceedings.  And counsel have not demonstrated that they could not have presented these grounds to the Governor without filing the federal lawsuits first.  The fact that these lawsuits may have, to some degree, bolstered the clemency application does not convert them into state executive clemency proceedings.  As a result, the Court finds that the federal lethal injection challenges do not constitute "proceedings for executive clemency" under § 3599(e).

The Court therefore turns to the question of whether the lawsuits constitute "other appropriate motions and procedures" under the statute.  As the Court stated in Harbison, "[i]t is the sequential organization of the statute and the term 'subsequent' that circumscribe counsel's representation . . ." 129 S. Ct. at 1488.  And the "organization of subsection (e) . . . mirror[s] the ordinary course of proceedings for capital defendants." Id.  The types of actions and procedures included in § 3599(e) are criminal and quasi-criminal in nature, and the competency and clemency proceedings included are those types of actions that flow from the denial of a federal habeas corpus petition.  Section 1983 or other federal challenges to a state's execution protocol are not the type of criminal or quasi-criminal proceedings that ordinarily flow from the denial of a federal petition for writ of habeas corpus.  To be sure, these civil actions are commonly filed by prisoners facing execution.  However, they are of a different nature than post-conviction or clemency proceedings, for they do not challenge the fact of a prisoner's execution but rather the manner in which an execution may be carried out.  The Court agrees with the Cooey decision in finding that these types of actions are not

within the scope of § 3599.  And the Court agrees with <u>Gary</u> that an action unrelated to the context of the proceedings listed in § 3599(e) does not qualify for compensation; these § 1983 actions are wholly divorced from the context of the proceedings in § 3599(e).  As a result, the Court finds that these civil actions are not compensable under § 3599(e).

Moreover, the "precedent" cited by counsel is non-binding and does not provide a thorough legal analysis of whether civil challenges to an execution protocol qualify for funding under § 3599(e).

Finally,

it must be remembered that CJA service is first a professional responsibility, and no lawyer is entitled to full compensation for services for the public good.

> [I]t is . . . clear that Congress did not intend to provide full compensation and that it contemplated appointments of private counsel to supplement the efforts of professional defender organizations. Thus, although the increased maximum rates envisioned greater participation by the private bar, the [CJA] also presupposes recognition by private attorneys of their professional obligation to render services for those unable to pay. The [CJA] is in no way an attorney's full-employment act. Congress merely intended that those attorneys who devote themselves to the time-honored tradition of service should not go entirely without compensation.
>
> The history of the American bar is replete with instances of pro bono service by its members. That service has not been undertaken with regard to monetary enrichment, but has been motivated by the higher objective of obtaining equal justice for all, a goal which enriches and strengthens the commonweal. If our holding today discourages those who look upon the [CJA] as a profit center, so be it. We have not yet reached the day when other members of the bar will not step forward to take their place, dedicated to the principles of equal justice and competent representation for the less fortunate in our society.

-14-

In re Carlyle, 644 F.3d 694, 699 (8th Cir. 2011) (Riley, C.J.) (quoting United States v. Smith, 633 F.2d 739, 741 (7th Cir. 1980)).

For these reasons, the Court will deduct from the CJA vouchers the hours attributed to Clemons and Ringo.

C.    Motions to Recall the Mandate

As the Court stated in its previous Order, these actions appear to be akin to motions to stay execution and are, therefore, compensable under § 3599(e).

D.    Date of Appointment

The Court noted in its previous order that counsel had billed hours for work performed before their nunc pro tunc date of appointment.  The Court informed counsel that if they intended to be compensated for these fees, they needed to provide reasons to the Court for such compensation.  Counsel's response to the Court does not include any reason why they should be compensated for those hours.  As a result, the Court will deduct those hours from the vouchers.

E.    Conclusion

For these reasons, the Court will direct the Clerk to reduce the CJA vouchers in accordance with the terms of this Memorandum and Order.  After the vouchers are recalculated, the Court will authorize them for payment.

Counsel are advised that to ensure full payment of CJA vouchers in cases before this Court they are encouraged to seek preauthorization for the work they intend to perform.

-15-

Motions for preauthorization of funds should be specific as to the nature of work to be performed and the hours necessary to perform the work.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk is directed to reduce the CJA 30 vouchers in accordance with the terms of this Memorandum and Order.

Dated this 17th day of November, 2011.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

-16-